BIRDSEYE and others *v.* HEILNER and others.

(*Circuit Court, S. D. New York.* December 22, 1885.)

PATENTS FOR INVENTIONS—INFRINGEMENT—DEFECTIVE PLEADINGS—PRACTICE.
By taking issue upon a plea the complainants admitted its sufficiency; and the defendants, having established the truth of the facts alleged in their plea, are entitled to a judgment.

In Equity.

*Edmund Wetmore,* for complainants.

*Livingston Gifford,* for defendants.

WALLACE, J. By taking issue upon the plea the complainants admit its sufficiency in point of form and substance. The only facts which are put in issue by the replication are whether the springs or stays which the defendants have employed in making corsets were purchased by them from one Bassett, and whether Bassett was licensed by complainants to manufacture and sell said stays or springs for use in the manufacture of corsets. If these allegations of fact are established, the legal conclusion that they are a good defense to the suit is not open to contention. The case has been argued as though the question were whether the complainants have authorized Bassett to license others to use the complainants' patents for improvements in corsets. No such issue is raised by the plea and replication.

The proofs show that the defendants purchased the springs or stays used by them in manufacturing corsets, and which are known in the trade as "twin-wire," from Blun & Company and one Doremus, who had purchased them from Bassett, and who were his agents to sell the same to others. The only question, therefore, is whether Bassett was authorized by the complainants to sell the articles for use in the manufacture of corsets. The complainants and Bassett entered into an agreement bearing date March 30, 1881, by which Bassett covenanted to manufacture for the complainants all corset materials which they might require upon specified conditions, including bone-wire, twin-wire, and other corset materials, and the complainants covenanted to discontinue the manufacture of such materials. The agreement contained these provisions:

"It is agreed that the parties of the second part [the complainants] shall not sell bone or twin wire to any other corset manufacturer except when it is intended to be used in corsets intended for the sales of the parties of the second part. It is agreed that the party of the first part [Bassett] shall not sell twin-wire to any party or parties for a less price than twenty per cent. in addition to the price which he shall charge the parties of the second part, and he shall pay to the parties of the second part five per cent. on all sales of twin-wire which he may make to any party or parties other than the parties of the second part."

It appears very clearly by the proofs that the complainants had been making for several months the article of twin-wire for use in

corsets of a description invented by one Bray. It is the precise article, also, that has been purchased by the defendant of Bassett through Blun & Co. and Doremus. As early as in the fall of 1880 the complainants had entered into an arrangement with Bray for the purchase of his invention, which had not then been patented, and Bray had agreed to assign his patent to them when it should be obtained. Owing to delay on the part of Bray, the application for a patent was not filed until April 23, 1881. In the mean time the complainants had been making twin-wire to use in manufacturing the Bray corsets, and had been manufacturing these corsets and selling them to a limited extent. The time came when the complainants wanted to forego the manufacturing of corset material and confine themselves to manufacturing corsets from materials to be supplied by others, hence the negotiations with Bassett which resulted in the execution of the agreement. Bassett was aware of the relations existing between the complainants and Bray, and that the complainants had purchased Bray's invention and expected to obtain the patent; and these matters had been the subject of conversation between Bassett and complainants during the negotiations which resulted in the execution of the agreement. It also appears that although at some period previous to the date of the agreement twin-wire had been used to a limited extent for other purposes than for the manufacture of the Bray corsets, its use for those purposes had become obsolete and had been abandoned. In view of these facts, it is manifest that both parties to the agreement understood that the twin-wire which Bassett was to make and sell to the complainants and to other persons was just such an article as he has sold to the defendants. It is also manifest that the parties contemplated that the sales which Bassett was expected to make would be made to manufacturers for use in making corsets. This was the only use of which the article was practically capable, and unless it was to be sold for such use it could not probably be sold at all.

If the question were whether by this agreement the complainants have authorized Bassett to license others to use their patents in manufacturing corsets, the answer would not seem to be difficult. The scope of the agreement does not extend beyond the relations which the parties to it are to assume towards each other in the manufacture and sale of corset material. There is nothing in its language, or in the circumstances contemporaneous with its execution, to justify the implication that Bassett was to have any interest by way of license or otherwise in either of the two patents upon which the bill is founded. The contemporaneous facts and the terms of the agreement are consistent with the purpose of the parties to secure to the complainants a royalty upon twin-wire in the event a demand for it should arise among manufacturers to be licensed by the complainants to use their Bray patent, who might find it more convenient or economical to purchase the material of Bassett than to make it themselves. This con-

clusion is enforced by the fact that the complainants did not then have any interest in the other of the two patents in suit,—the patent granted to Cohn in February, 1880, and which was purchased by the complainants in October, 1884. But, as has been stated, this question is not here. The defendants have established the truth of the facts alleged in their plea, and they are therefore entitled to judgment.